# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| DONALD HUTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-377-JVB-JPK |
| | ) | |
| PORTER HOSPITAL, LLC, | ) | |
| D/B/A PORTER REGIONAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant-employer Porter Hospital, LLC, moves for summary judgment against Plaintiff-employee Donald Huttle on his age-discrimination claim. For the reasons below, this Court denies Defendant's motion.

**A.  Overview of the Case**

In 2011, Plaintiff began working full-time as a security officer for Defendant. (DE 43-2 at 2.) He served under supervisors Robert O'Dea and Rick Owens. (*Id*. at 3.) Four years later, in 2015, Defendant placed its security department under the command of Christian Goss, the director of engineering. (*Id*. at 4; DE 43-3 at 4.) On June 18, 2015, Plaintiff was escorted to a meeting with Mr. Goss and some members of human resources. (*Id*. at 15.) At that meeting, Defendant terminated Plaintiff as part of a reduction in force (the "Reduction"). (*Id*. at 15–16.) Defendant did not explain the reason for Plaintiff's termination, but assured Plaintiff that it was not performance related. (*Id*. at 16.)

Defendant put Mr. Goss in charge of determining who would be let go as part of the

1

Reduction. (DE 43-3 at 15.) To facilitate this process, Mr. Goss completed a form (the "Evaluation") in which he rated employees on the basis of certain categories, including relevant job experience and attendance. (DE 43-5.) Mr. Goss remained ultimately responsible for the information on the Evaluation, which played a significant role in deciding who would be let go. (*Id*. at 17, 20.) Overall, the Reduction claimed ten security officers, two of whom were full-time. (DE 43-5.) Plaintiff was one of those two. (*Id.*)

Plaintiff, then 64 years old, was among the bottom two full-time security officers according to the Evaluation. (*Id*.) On the other hand, Justin Thomas, a then-28-year-old full-time security officer who survived the Reduction, had the second-highest score. (*Id*.) Plaintiff claims that Mr. Goss terminated him on the basis of his age and points to Mr. Thomas as a similarly-situated younger employee who received more favorable treatment.[1] (DE 47 at 8.) As for the Evaluation, Plaintiff paints it as a "sham." (*Id.* at 12.) Subsequently, Plaintiff filed an age-discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (DE 43-7.) The EEOC, being unable to conclude that Defendant committed a violation, sent Plaintiff a notice of right to sue. (DE 43-9.) Plaintiff then timely filed the instant complaint. (DE 1.)

**B.     Standard of Review**

To succeed on summary judgment, Defendant must "show[] that there is no genuine dispute as to any material fact" and that Defendant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendant can meet this burden by "identify[ing] those portions of the record that demonstrate the absence of a genuine issue of material fact." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). Because Plaintiff bears the burden of proof on the issue

---

[1] Plaintiff, in his deposition, also claimed he was let go because he was a white male who lacked political influence. (DE 43-2 at 21.) However, Plaintiff's complaint only alleges age discrimination.

underlying the complaint, "he must then go beyond the pleadings and affirmatively demonstrate a genuine issue of material fact for trial" by "demonstrat[ing] that the record, taken as a whole, could permit a rational finder of fact to rule in favor of" Plaintiff. *Id.* As the non-moving party, Plaintiff is entitled to "the benefit of conflicts in the evidence and any reasonable inferences in [his] favor." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 700 (7th Cir. 2013).

The Age Discrimination in Employment Act ("ADEA") prohibits employers from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a). To survive summary judgment without direct evidence of discrimination, the plaintiff must first establish a prima facie case by showing that "(1) he is a member of a protected class; (2) he reasonably performed his job to his employer's expectations; (3) he was subject to an adverse employment action; and (4) other similarly situated employees who were substantially younger than him were treated more favorably." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). The employer must then "articulate a legitimate, non-discriminatory reason for discharging" the plaintiff. *Id.* If the employer does so, the plaintiff needs to show that the given reason is mere pretext, or else the employer wins on summary judgment. *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir. 1995). To establish pretext, "a plaintiff must show that [the] employer is *lying*, not merely that [the] employer is wrong." *Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013). The ultimate question, however, is "whether a reasonable jury could infer prohibited discrimination." *Perez*, 731 F.3d at 703.

C.   **Analysis**

Defendant concedes that Plaintiff was in a protected class (over age 40), was performing to Defendant's legitimate expectation, and was discharged. However, Defendant disputes

3

whether similarly situated younger employees were treated more favorably. For his part, Plaintiff contends that the Evaluation, which constituted a reason for his discharge, is mere pretext and is thus invalid. Because Defendant's attack on Plaintiff's prima facie case is based in large part on the validity of the Evaluation, this Court addresses the pretext component first.

**(1)     A Reasonable Jury Could Find that the Evaluation Is Mere Pretext**

At the outset, the ADEA does not turn this Court into a human-resources appeals council. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions."). Hence, Plaintiff cannot survive summary judgment by merely disagreeing with the Evaluation. *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992). Nor will a supervisor's assurances of Plaintiff's quality create a genuine issue of material fact. *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). Here, however, Plaintiff has gone further by unleashing a full-on factual assault on the Evaluation, which, if fully credited, destroys any credibility the Evaluation may have had. *Cf. id.* at 1460–61 ("A detailed refutation of events which underlie the employer's negative performance assessment demonstrates that the employer may not have honestly relied on the identified deficiencies in making its decision."). In other words, Plaintiff's evidence suggests that the Evaluation itself may be a lie.

(a)     *Plaintiff's Evidence Questions the Validity of the Evaluation Scores*

Mr. Goss gave Mr. Thomas very high marks on the Evaluation, but Plaintiff vigorously disputes those scores with specific factual allegations. For instance, Mr. Thomas scored 65/65 on "Attendance/reliability." (DE 43-5.) However, in the two years preceding the Reduction, Mr.

Thomas accumulated two write-ups, one for tardiness and one for attendance issues. (DR 47-11 at 15.) His 2013 employee evaluation contained multiple notations of poor attendance. (*Id*. at 16–22.) True, his next evaluation credited him with "com[ing] in early on multiple occasions or stay[ing] late to help cover busy shifts." (*Id*. at 10.) But Mr. Owens testified in a deposition that Mr. Thomas was "continuously calling off" (cancelling his shifts) and leaving his post to chat with nurses. (DE 47-5 at 24.) Mr. Owens explained that when he would inform Mr. Goss of these problems, Mr. Goss would simply respond, "Just leave [the employee] alone." (*Id*. at 22.) Mr. O'Dea also confirmed that Mr. Thomas "would constantly hang around the ER even when he had assigned duties elsewhere." (DE 47-4 at 4.) Mr. O'Dea additionally recounted experiences of attempting to discipline employees, only to be told by Mr. Goss "not to talk to anyone about doing anything like that." (*Id.* at 3.)

With respect to the category of "Relevant job experience and training for targeted position," Mr. Goss explained in his deposition that being a police officer would give an employee relevant job experience unless "they were a police officer for contracted services over in Iran . . . or over in a third world country where they had to shoot people all the time, [which] would have been the wrong type of experience." (DE 43-3 at 21.) Mr. Thomas came from the Navy. (DE 47-11 at 82.) As far as the value of Navy experience in a hospital-security setting is concerned, Mr. Thomas completed two employee follow-up questionnaires in 2011, in which he was asked, "Is there anything your previously employer did that we could learn from?" (DE 47-11 at 73–74.) He stated that it was "hard to compare" and that he did not think his previous experience was "applicable." (*Id*.) When asked the same question in 2016, he gave an unambiguous answer: "Nothing, what so ever." (*Id*. at 76.) Despite this, Mr. Thomas scored 65/65 in relevant job experience. (DE 47-5.)

5

On the other hand, Plaintiff scored 20/65 on attendance. Defendant faults Plaintiff for complaining about others' attendance failures while "ignor[ing] evidence from his own personnel file of similar issues. (DE 52 at 13.) However, Defendant does not cite any of this evidence, and the only "personnel file" in the record is Plaintiff's 2013 employee evaluation, which makes no mention of any attendance issues. (*See* DE 47-7.) Additionally, Plaintiff has experience both in the military and in the Lake County police department. (DE 43-2 at 17, 24.) In other words, Plaintiff, unlike Mr. Thomas, had the additional benefit of having been a police officer where he did not have to shoot people all the time. Yet, he scored only 20/65 on relevant job experience. (DE 43-5.)

In summary, this evidence would allow a reasonable jury to conclude that Mr. Goss deliberately ignored relevant information to rig the Evaluation scores in favor of Mr. Thomas and against Plaintiff. *Cf. Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 429 (7th Cir. 2000) ("The record was full of objective evidence . . . suggesting that . . . in the comparative ratings that are required in a [reduction in force, the plaintiffs] could have survived had the criteria been age-neutral."). Whether Mr. Goss actually did this—and if he did, whether it was due to age—is for a jury to decide.

(b)    *Mr. O'Dea's Specific Criticisms Are Relevant*

Mr. O'Dea completed an affidavit detailing his many disagreements with the Evaluation scores. Defendant argues that Mr. O'Dea's criticisms are irrelevant because Mr. O'Dea was not in charge of preparing the Evaluation. (DE 52 at 4.) Specifically, Defendant attacks the "corrected" Evaluation that Mr. O'Dea completed as an immaterial difference in opinion. (*Id.*) As an initial matter, whether Mr. Goss incompetently completed the Evaluation is of no moment,

for the ADEA only prohibits discriminatory decisions; it does not care about boneheaded moves. *See Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1226 (7th Cir. 1991) ("The ADEA . . . is not about good employees, it is not about wise employment decisions, it is not about 35 years of loyalty to one company.") And had Mr. O'Dea said nothing more than that Mr. Goss got it wrong, this Court would be inclined to agree with Defendant. *Cf. Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006) ("An honest mistake, however dumb, is not [pretext]."). Here, however, Mr. O'Dea recounted specific instances of Mr. Goss receiving, but deliberately disregarding, information critical to completing the Evaluation. These stories—which this Court must take at face value because Plaintiff is the non-moving party—suggest that the Evaluation scores were not only wrong, but false. Thus, while Mr. O'Dea's general disdain for the Evaluation may be of no value, his specific criticisms of it are relevant.

**(2)     The Evidence Suggests that Mr. Thomas Was Treated More Favorably**

In a discrimination action, the battles over pretext and improper favorable treatment often intertwine. *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 673 (7th Cir. 2009) ("Often, the same evidence used to establish the prima facie case is sufficient to allow a jury to determine that a defendant's stated reason for terminating a plaintiff was a mere front for an ulterior, unlawful motive."). Such is the case here. Plaintiff argues that Mr. Thomas, a similarly situated younger employee, was treated more favorably. (DE 47 at 8.) Defendant's response is that Plaintiff should look to the Evaluation, which shows that Plaintiff cannot compare himself to Mr. Thomas and his much higher scores.[2] (DE 52 at 11–13.) But if the Evaluation is mere pretext—and

---

[2] The parties additionally argued over whether Defendant replaced Plaintiff with a younger employee, which is another way to establish favorable treatment. Because Plaintiff's claim survives summary judgment anyway, this Court will not address that matter here.

especially if Mr. Goss fudged the numbers to give Mr. Thomas higher scores and Plaintiff lower scores—then any argument relying on it falls by the wayside.

Defendant also comes armed with statistics: the EEOC, in dismissing the charge, noted that "the average [age] of the group [of security officers] only changed by 1.5 years" and that employees older than Plaintiff were retained. (DE 43-8.)[3] For starters, statistics do not tell the whole story. For instance, the average age of those who fell to the Reduction is over three years higher than the average age of those who survived it, and over 70% of employees eligible for termination who were outside the protected age group survived the Reduction. (*See* DE 43-5.) Second, an employer cannot immunize itself from age-discrimination claims merely by retaining the oldest employee. *Cf. Collier*, 66 F.3d at 891 (finding a prima facie case even though an employee older than the plaintiff was retained). Third, the question is not whether Defendant discriminated against older employees in general, but whether Defendant discriminated against a *specific* older employee. Granted, the statistics have value, but given Plaintiff's evidence, genuine issues of material facts still remain.

Defendant's remaining argument—that other similarly situated younger employees failed to survive the Reduction and thus were not treated more favorably—suffers from the same flaw. Defendant notes that two employees, aged 33 and 36 at the time, were also terminated. Yet, Plaintiff need not prove that every single similarly situated younger employee was treated more favorably. *Cf. Adams*, 231 F.3d at 419 (summary judgment inappropriate even though over 30% of the laid off employees were outside the protected age group). Defendant's argument could win the day in front of a jury, but summary judgment demands more.

---

[3] The EEOC was "unable to conclude that the information obtained establishe[d] violations of the [relevant] statutes." (DE 43-9.)

**D.   Conclusion**

Plaintiff has provided enough evidence to create a genuine issue of material fact as to whether Mr. Goss intentionally falsified the Evaluation scores to give Mr. Thomas, a similarly-situated younger employee, a better chance than Plaintiff. Accordingly, Defendant's motion for summary judgment is DENIED.

SO ORDERED on July 17, 2019.

                                                  S/ Joseph S. Van Bokkelen
                                                JOSEPH S. VAN BOKKELEN
                                                UNITED STATES DISTRICT JUDGE